THE STATE OF OHIO, APPELLEE, *v.* HARCOURT, APPELLANT.

(No. CA87-05-037—Decided February 29, 1988.)

*George E. Pattison,* prosecuting attorney, and *Lawrence R. Fisse,* for appellee.

*R. Scott Croswell III* and *Elizabeth E. Agar,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

In the early morning hours of September 15, 1986, the Clermont County Sheriff's Department received a phone call from defendant-appellant, Vernon Harcourt. After giving his name and address, appellant stated that he had just killed his wife and neighbor. This information was relayed to the Goshen Township Police Department and Patrolman William Johnson was dispatched to the scene.

Upon arriving at the scene, Johnson illuminated appellant's mobile home with search lights and used the loudspeaker to advise anyone who might be inside to exit. When appellant came out, Johnson asked what was going on and appellant replied, "I caught them fucking and I killed them." Appellant was arrested and placed in the custody of another police officer who had just arrived. Johnson then entered the mobile home and discovered the naked bodies of appellant's wife, Betty Harcourt, and a next-door neighbor, Robert Behler, in the main bedroom. Both had suffered severe head wounds and a substantial loss of blood. Medical testimony indicated that the wounds were consistent with being struck with a lug wrench which was found in another room. Appellant's wife survived, but remained paralyzed on the left side of her body. Behler was pronounced dead at the scene.

On September 18, 1986, appellant was indicted by the Clermont County Grand Jury on the charges of aggravated murder, R.C. 2903.01, and attempted aggravated murder, R.C. 2923.02. Appellant was tried before a jury and found not guilty of aggravated murder and attempted aggravated murder, but guilty of the lesser offenses of murder, R.C. 2903.02, and felonious assault, R.C. 2903.11. The trial court imposed consecutive sentences of fifteen years to life and eight to fifteen years, respectively. Appellant has appealed setting forth the following four assignments of error:

Assignment of Error No. 1

"The trial court erred to defendant's prejudice when it barred the use of defense evidence which had inadvertently not been revealed to the state during discovery."

Assignment of Error No. 2

"The trial court erred to defendant's prejudice when it admitted gruesome, repetitive and cumulative photographs of the alleged murder victims."

Assignment of Error No. 3

"The trial court erred to defendant's prejudice in failing to declare a mistrial or to give cautionary instructions to the jury in response to the state's suggestion that a grand jury, or the judge, had already determined that aggravated murder was the appropriate charge in the case at bar."

Assignment of Error No. 4

"The trial court erred to defendant's prejudice in failing to grant his motions for a judgment of acquittal with regard to the charges of aggravated murder, attempted aggravated murder and felonious assault."

In his first assignment of error, appellant contends that the trial court erred in barring the use of defense evidence which had not been revealed to the state during discovery.

Following the state's examination of Ray Snyder, one of the Goshen Township police officers who investigated the scene, defense counsel informed the state that he had a previously undisclosed exhibit which he intended to use during cross-examination. The state objected to any use of the exhibit, which consisted of two prescription bottles allegedly found in the bathroom of the mobile home, and requested an inquiry into the reasons for the nondisclosure. On voir dire, defense counsel stated that at the time of discovery he was not sure whether he would use the exhibit as evidence and that the nondisclosure was merely an inadvertent omission. Nevertheless, the trial court excluded the exhibit on the basis that defense counsel had violated his continuing duty to disclose and that the exhibit was not material or relevant to any of the issues at hand. The court then advised defense counsel as follows:

"Let the record reflect to Mr. Chapman, at the appropriate time, if

you feel it necessary to protect the record that you intend to — or would have intended at that particular point to have this exhibit identified or questions concerning it that you approach the bench and so indicate so that we can have the record so noted.

"MR. CHAPMAN: Yes, Your Honor.

"THE COURT: Of course, likewise, I would presume that if there is no request to get into this issue during your cross-examination that the matter would not have been approached by you, if you understand what I'm saying at this point in time. I need to know for the record if and when the issue even comes up.

"MR. CHAPMAN: Very well."

Defense counsel subsequently cross-examined Snyder and asked if he had found any prescription medication during his search of the mobile home. Snyder did not recall, but indicated that he was not looking for prescription medication because he did not consider it to be of evidentiary value. Defense counsel then went on to other lines of questioning without attempting to proffer the exhibit.

In light of the trial court's earlier admonition, appellant's failure to proffer could be construed as a waiver of any error in the exclusion of the exhibit. See *LeFort* v. *Century 21-Maitland Realty Co.* (1987), 32 Ohio St. 3d 121, 123, 512 N.E. 2d 640, 643; *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, paragraph one of the syllabus, vacated as to the death penalty (1978), 438 U.S. 911. Nevertheless, we have reviewed the record and find the first assignment to be without merit.

The imposition of sanctions for discovery violations is generally within the sound discretion of the trial court. *State* v. *Parson* (1983), 6 Ohio St. 3d 442, 445, 6 OBR 485, 487, 453 N.E. 2d 689, 691. Appellant argues that the trial court abused this discretion by not imposing a less severe sanction. We disagree.

In support of his argument, appellant cites *Lakewood* v. *Papadelis* (1987), 32 Ohio St. 3d 1, 511 N.E. 2d 1138. In *Papadelis,* defense counsel failed to provide a witness list to the prosecution. The trial court, without inquiring into the surrounding circumstances, excluded the testimony of all defense witnesses pursuant to Crim. R. 16(E)(3). On review, the Ohio Supreme Court found that such complete exclusion without inquiry violated the defendant's Sixth Amendment right to present a defense. The court held that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Papadelis, supra,* at paragraph two of the syllabus. The court emphasized, however, that its holding "should not be construed to mean that the exclusion of testimony or evidence is never a permissible sanction in a criminal case. It is only when the exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." *Id.* at 5, 511 N.E. 2d at 1142.

In the case *sub judice,* the trial court did inquire into the circumstances surrounding the discovery rule violation. Although defense counsel stated that the nondisclosure was an inadvertent omission, the court ordered exclusion because it found that the exhibit was not material or relevant to appellant's guilt. Defense counsel conceded that its only relevance was as a potential means to impeach Snyder's testimony regarding the scope and extent of the search of the mobile home. In light of Snyder's

response when asked if he had found any prescription medication, it is unlikely that the exhibit would have had much impact as an impeachment tool. In any event, it can hardly be said that appellant was completely denied his constitutional right to present a defense. *Papadelis, supra.* Therefore, we find no abuse of discretion in the exclusion of the exhibit. Appellant's first assignment of error is overruled.

In his second assignment of error, appellant asserts that the trial court erred in admitting ten photographs of the victims. Eight of these photographs depicted the body of Robert Behler, and two depicted the condition of Betty Harcourt's head as she was being prepared for surgery. Appellant contends that these photographs were "gruesome, repetitive, and cumulative" and, therefore, inadmissible under Evid. R. 403. We do not agree.

"When considering the admissibility of photographic evidence under Evid. R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. * * *" *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 257, 513 N.E. 2d 267, 273. In balancing the probative value against the danger of unfair prejudice, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of discretion. *Id.* at 258, 513 N.E. 2d at 274; *State* v. *Rahman* (1986), 23 Ohio St. 3d 146, 152, 23 OBR 315, 320, 492 N.E. 2d 401, 407.

Here, the eight photographs of Behler's body could be considered "gruesome." However, the mere fact that a photograph may be considered gruesome or horrendous is not, in and of itself, sufficient to render it inadmissible. *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 25, 514 N.E. 2d 394,

401; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 264-265, 15 OBR 379, 401, 473 N.E. 2d 768, 791. The eight photographs depicted the crime scene, the location of Behler's body, and the nature and extent of his wounds. Photographs of this nature constitute probative evidence of a purpose to cause death. See *Maurer, supra; State* v. *DePew* (June 29, 1987), Butler App. No. CA85-07-075, unreported, at 19-20, affirmed (1988), 38 Ohio St. 3d 275, 281, 528 N.E. 2d 542, 550-551. Furthermore, each of the photographs illustrated the testimony of several witnesses concerning the crime scene, the cause of death, and appellant's liability therefor. "* * * Such illustrative photographs are generally admissible." *Maurer, supra,* at 265, 15 OBR at 402, 473 N.E. 2d at 792. Accordingly, we find no abuse of discretion in their admission.

Appellant also challenges the admission of two photographs which depict the condition of Betty Harcourt's head as she was being prepared for surgery some seven months after the beating. These photographs were used to illustrate the testimony of Dr. John Heiss, the treating physician, who related the nature, extent, and cause of Betty Harcourt's injuries. Although the remoteness in time certainly diminished the probative value of these photographs, we are unable to conclude that the probative value was substantially outweighed by the danger of unfair prejudice or that the trial court abused its discretion in admitting them. Appellant's second assignment of error is overruled.

In his third assignment of error, appellant argues that the trial court erred in failing to declare a mistrial or to give an immediate cautionary instruction when appellee referred to the grand jury indictment in its closing argument.

According to the record before us, appellant never moved for a mistrial or requested an immediate cautionary instruction from the trial court. This alone constitutes sufficient grounds for rejecting appellant's arguments. See *State* v. *Clark* (Dec. 24, 1986), Summit App. No. 12678, unreported. However, even assuming *arguendo* that appellee's remarks were improper, appellant suffered no material prejudice. The trial court sustained appellant's objections to the remarks and subsequently instructed the jury that neither the indictment nor arguments of counsel constituted evidence of guilt. The jury returned a verdict of not guilty on the charges of aggravated murder and attempted aggravated murder. Upon review of the record in its entirety, it is clear that there was no manifest necessity for a mistrial, no extraordinary or striking circumstances, and no end of public justice to be served by a mistrial. *State* v. *Schmidt* (1979), 65 Ohio App. 2d 239, 244, 19 O.O. 3d 201, 204, 417 N.E. 2d 1264, 1269. See, also, *State* v. *Abboud* (1983), 13 Ohio App. 3d 62, 13 OBR 66, 468 N.E. 2d 155. Accordingly, we find no abuse of discretion in the trial court's actions. The third assignment of error is overruled.

In his final assignment of error, appellant contends that the trial court erred in failing to grant his Crim. R. 29 motion for acquittal. We find this contention to be without merit.

Under Crim. R. 29(A), a motion for acquittal may be granted if the evidence is insufficient to sustain a conviction of the offense charged. The motion challenges the prosecution's *prima facie* case and focuses upon the legal sufficiency of the evidence, not its weight or credibility. *State* v. *Kline* (1983), 11 Ohio App. 3d 208, 213, 11 OBR 330, 336-337, 464 N.E. 2d 159, 165; *State* v. *Burns* (June 1, 1987), Preble App. No. CA86-10-021, unreported, at 6-7. If reasonable minds can reach different conclusions as to whether each element of the crime has been proven beyond a reasonable doubt, then the motion must be overruled. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus; *State* v. *Johnson* (June 29, 1987), Butler App. No. CA86-04-060, unreported, at 10.

Construing the evidence most strongly in favor of the state, we conclude that reasonable minds could reach different conclusions as to whether each element of the crimes charged had been proven beyond a reasonable doubt. See *State* v. *Uhler* (C.P. 1979), 61 Ohio Misc. 34, 14 O.O. 3d 158, 402 N.E. 2d 556. Accordingly, we find no error in the trial court's ruling. Appellant's fourth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and YOUNG, JJ., concur.